United States District Court
Southern District of Texas
**ENTERED**
January 26, 2023
Nathan Ochsner, Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| KELLY ELAINE SLAYTON, § | | |
| SPN #03078865, § | | |
| § | | |
| *Plaintiff,* § | | |
| § | | |
| vs. § | | CIVIL ACTION NO. H-22-4411 |
| § | | |
| WILLIAM KAUPER CHEADLE, *et al.,* § | | |
| § | | |
| *Defendants.* § | | |
| § | | |

## MEMORANDUM OPINION AND ORDER

The plaintiff, Kelly Elaine Slayton (SPN #03078865), is a pretrial detainee in custody at the Harris County Jail. Proceeding *pro se* and *in forma pauperis*, she filed a civil rights complaint under 42 U.S.C. § 1983 based on allegations that her attorney, his law firm, the judge presiding over her state criminal case, and the Harris County Clerk of Court have violated her rights during her pending criminal proceedings. (Dkt. 1).

Because Slayton is a prisoner seeking relief from the government, the Court is required to screen her complaint as soon as feasible after docketing. 28 U.S.C. § 1915A(a); *see also* 28 U.S.C. § 1915(e)(2)(b) (providing for screening of suits by plaintiffs proceeding *in forma pauperis*); 42 U.S.C. § 1997e(c) (providing for screening of suits by prisoners under § 1983). "As part of this review, the district

court is authorized to dismiss a complaint if the action 'is frivolous, malicious, or fails to state a claim upon which relief may be granted.'" *Fleming v. United States*, 538 F. App'x 423, 425 (5th Cir. 2013) (per curiam) (quoting 28 U.S.C. § 1915A(b)(1)). A complaint is frivolous "if it lacks an arguable basis in law or fact." *Geiger v. Jowers,* 404 F.3d 371, 373 (5th Cir. 2005) (per curiam). "A complaint lacks an arguable basis in law if it is based on an indisputably meritless legal theory, such as if the complaint alleges the violation of a legal interest which clearly does not exist." *Samford v. Dretke,* 562 F.3d 674, 678 (5th Cir. 2009) (per curiam); *Siglar v. Hightower,* 112 F.3d 191, 193 (5th Cir. 1997). In addition, the Court may dismiss the complaint, or any portion of the complaint, if it "seeks monetary relief from a defendant who is immune from such relief." 28 U.S.C. § 1915A(b)(2). Having conducted this required screening of Slayton's complaint, the Court dismisses this action for the reasons explained below.

## I.   BACKGROUND

Publicly available records show that Slayton is currently in jail on a charge or murder. *See* https://harriscountyso.org/JailInfo (last visited Jan. 23, 2023). On December 19, 2022, she filed a "Prisoner's Civil Rights Complaint," identifying as defendants the Honorable Maritza Antu, Judge of the 482nd District Court; Harris County Clerk of Court Marilyn Burgess; William Kauper Cheadle, Esq.; and the Cheadle Law Firm. (Dkt. 1, p. 3).

2

In her complaint and its attachments, Slayton alleges that Judge Antu, who is presiding over Slayton's state-law criminal case, threatened her with additional jail time if she refused to accept Cheadle as her attorney and if she refused to comply with mitigation services. (*Id.* at 7). Slayton alleges that Judge Antu refused to allow her to appear in court for over a year and then refused to either release her to pretrial release or set an affordable bond. (*Id.*). She also alleges that Judge Antu ignored the motions and complaints she filed and spoke only with her attorney rather than with her. (*Id.*). As to Burgess, Slayton alleges that she "picked and chose which motions I mailed to file." (*Id.* at 3). And as to Cheadle and his firm, Slayton alleges that Cheadle "appointed himself" as retained counsel and then engaged in sexually inappropriate actions with Slayton. (*Id.*). She also alleges that Cheadle threatened and coerced her into signing a bill of sale. (*Id.*). As relief, Slayton asks the Court to order her release and provide her with monetary damages of $3.5 million for defamation of character and physical and mental abuse. (*Id.* at 4).

## II. LEGAL STANDARDS

Slayton brings her action under 42 U.S.C. § 1983. "Section 1983 does not create any substantive rights, but instead was designed to provide a remedy for violations of statutory and constitutional rights." *Lafleur v. Texas Dep't of Health*, 126 F.3d 758, 759 (5th Cir. 1997) (per curiam); *see also Baker v. McCollan*, 443 U.S. 137, 144 n.3 (1979). To state a valid claim under § 1983, a plaintiff must

3

(1) allege a violation of rights secured by the Constitution or laws of the United States, and (2) demonstrate that the alleged deprivation was committed by a person acting under color of state law. *See West v. Atkins,* 487 U.S. 42, 48 (1988); *Gomez v Galman,* 18 F.4th 769, 775 (5th Cir. 2021) (per curiam).

The Court is mindful that Slayton is proceeding *pro se*. Federal courts do not hold *pro se* pleadings "to the same stringent and rigorous standards as . . . pleadings filed by lawyers." *Hernandez v. Thaler,* 630 F.3d 420, 426 (5th Cir. 2011) (per curiam); *see also Haines v. Kerner,* 404 U.S. 519, 520 (1972) (per curiam). Instead, pleadings filed by a *pro se* litigant "are entitled to the benefit of liberal construction." *Hernandez,* 630 F.3d at 426. But even under a liberal construction, "*[p]ro se* litigants must properly plead sufficient facts that, when liberally construed, state a plausible claim to relief, serve defendants, obey discovery orders, present summary judgment evidence, file a notice of appeal, and brief arguments on appeal." *E.E.O.C. v. Simbaki, Ltd.,* 767 F.3d 475, 484 (5th Cir. 2014) (cleaned up).

### III. DISCUSSION

#### A. Claims Against Judge Antu

Slayton alleges that the Judge Antu violated her constitutional rights by failing to allow Slayton to appear in court for over a year, failing to allow Slayton to speak when she did appear in court, and failing to either grant pretrial release or set a reasonable bond. (Dkt. 1; p. 7). Slayton also alleges that Judge Antu

4

threatened her with extensive delays if she did not agree to have Cheadle as her appointed counsel. (*Id.*). It is not clear from Slayton's complaint whether she sues Judge Antu in her official or individual capacity; however, Slayton is not entitled to relief against Judge Antu in either capacity.

### 1. Official Capacity Claims

#### a. Damages Claim

To the extent that Slayton seeks money damages from Judge Antu in her official capacity, the claim is barred by sovereign immunity. Sovereign immunity bars actions against a state or state official unless Congress has abrogated the immunity or the state has specifically waived its immunity. *See Will v. Mich. Dep't of State Police*, 491 U.S. 58, 66 (1989). Congress did not abrogate the states' sovereign immunity when it enacted § 1983. *Id.* And the State of Texas has not waived its sovereign immunity for purposes of § 1983 actions. *See Tex. A & M Univ. Sys. v. Koseoglu*, 233 S.W.3d 835, 839 (Tex. 2007) ("It is up to the Legislature to institute such a waiver, and to date it has not seen fit to do so."); *see also Putnam v. Iverson*, No. 14-13-00369-CV, 2014 WL 3955110, at *3 (Tex. App. – Houston [14th Dist.] Aug. 14, 2014, pet. denied) (the Texas Legislature has not waived sovereign immunity for any claim brought under § 1983).

The fact that Slayton has sued Judge Antu—a state employee—rather than the state itself, does not change this analysis. When a government employee is sued

in his or her official capacity, the employing entity is the real party in interest for the suit. *See Kentucky v. Graham*, 473 U.S. 159, 165-66 (1985) (official-capacity suits "generally represent only another way of pleading an action against an entity of which an officer is an agent" and are "treated as a suit against the entity") (citations omitted). Slayton's claim for money damages against Judge Antu in her official capacity is construed as a claim against the State of Texas and is barred by sovereign immunity. The claim is dismissed with prejudice under 28 U.S.C. § 1915A(b)(2) as seeking relief from a defendant who is immune from such relief.

### b. Injunctive Relief Claim

Sovereign immunity plays a narrower role in § 1983 claims seeking injunctive relief. When a plaintiff seeks injunctive relief in a § 1983 claim, sovereign immunity will protect the state or state official only when the claims are based on past actions and past violations of federal law rather than ongoing actions and continuing violations. *See Green v. Mansour*, 474 U.S. 64, 73 (1985) (citing *Ex parte Young*, 209 U.S. 123 (1908)). To determine whether the plaintiff's claims are barred by sovereign immunity, the Court examines the complaint to determine whether it "alleges an ongoing violation of federal law and seeks relief properly characterized as prospective." *Verizon Md., Inc. v. Pub. Serv. Comm'n of Md.*, 535 U.S. 635, 645 (2002). If the plaintiff seeks only retroactive relief, sovereign immunity bars the claim, and if "there is no continuing violation of federal law to

6

enjoin in this case, an injunction is not available." *Green,* 474 U.S. at 71.

Slayton requests only retroactive relief in her complaint. She asks this Court, in substance, to vacate or reverse Judge Antu's orders denying Slayton pretrial release and setting her bond. This request seeks redress for past harms rather than protection from an ongoing violation of federal law. *See, e.g., Catanach v. Thomson,* 718 F. App'x 595, 598-99 (10th Cir. 2017), *cert. denied,* 138 S. Ct. 1991 (2018) ("Catanach sought relief from past harms, i.e., relief from Thomson's past rulings on his motions for recusal and for summary judgment and his failure to grant an expedited hearing or to require the City to issue a surety bond with its application for an injunction. The district judge was correct—these claims do not allege an ongoing violation of federal law."); *Bowling v. Evans,* No. 4:18-cv-610-ALM-CAN, 2019 WL 5395564, at *5 (E.D. Tex. Mar. 8, 2019) (the plaintiff's request that the federal court reverse a state appellate justice's prior orders and rulings was a request for retroactive relief).

Because Slayton seeks only retroactive relief in her claim for injunctive relief against Judge Antu in her official capacity, the claim is barred by sovereign immunity. It is therefore dismissed with prejudice under 28 U.S.C. § 1915A(b)(2).

2. **The Individual Capacity Claims**

   a. **Damages**

To the extent that Slayton seeks damages from Judge Antu in her individual

7

capacity, Judge Antu is protected by judicial immunity. While § 1983 provides a remedy for violations of federal law by state officials, *see Nelson v. Campbell*, 541 U.S. 637, 643 (2004), state-court judges are entitled to immunity from damages claims arising out of acts performed in the exercise of their judicial functions. *See Mireles v. Waco*, 502 U.S. 9, 9-10 (1991) (per curiam); *Mays v. Sudderth,* 97 F.3d 107, 110 (5th Cir. 1996). A plaintiff may overcome judicial immunity only when either (1) the claims allege liability for nonjudicial actions, that is, actions not taken in the judge's judicial capacity, or (2) the claims allege liability for actions that, although judicial in nature, are taken in the complete absence of all jurisdiction. *Id.* at 11-12.

In determining whether a judge's actions were "judicial in nature," courts consider "(1) whether the precise act complained of is a normal judicial function; (2) whether the acts occurred in the courtroom or appropriate adjunct spaces such as the judge's chambers; (3) whether the controversy centered around a case pending before the court; and (4) whether the acts arose directly out of a visit to the judge in his official capacity." *Malina v. Gonzales*, 994 F.2d 1121, 1124 (5th Cir. 1993). These factors are broadly construed in favor of immunity, and immunity may be granted even though one or more of these factors is not satisfied. *Id.* Allegations that a judge made improper or erroneous rulings are not sufficient to deprive a judge of judicial immunity. *See Mays*, 97 F.3d at 111. Even allegations

that rulings were made as a result of bad faith or malice are not sufficient to overcome judicial immunity. *Mireles,* 502 U.S. at 11; *Mays,* 97 F.3d at 111.

Slayton does not satisfy either of the elements to overcome judicial immunity. As the district judge for the 482nd District Court, Judge Antu has jurisdiction over the cases pending in that court. *See* TEX. CONST. art. V, § 8 ("District Court jurisdiction consists of exclusive, appellate, and original jurisdiction of all actions, proceedings, and remedies, except in cases where exclusive, appellate, or original jurisdiction may be conferred by this Constitution or other law on some other court, tribunal, or administrative body."); *see also Dubai Petroleum Co. v. Kazi*, 12 S.W.3d 71, 75 (Tex. 2000) ("A Texas district court . . . is a court of general jurisdiction" and "all claims are presumed to fall within the jurisdiction of the district court unless the Legislature or Congress has provided that they must be heard elsewhere."). Slayton has not shown that Judge Antu acted without jurisdiction when ruling on matters in Slayton's criminal case.

In addition, Slayton does not allege facts showing that Judge Antu's actions were not judicial in nature. Decisions about whether to grant pretrial release, what bond to set, whether to appoint counsel and who that counsel will be, when to schedule hearings, and whether to entertain motions and arguments from defendants who are represented by counsel are normal judicial functions. Orders of this nature are normally entered either in the courtroom or the judge's chambers, and Slayton

affirmatively alleges that many of the actions occurred in Judge Antu's courtroom. Slayton's claims against Judge Antu arise directly out of Slayton's pending state-court criminal case, and the challenged actions arise from hearings before Judge Antu in her official capacity. These facts demonstrate that the challenged actions were judicial actions for which Judge Antu is protected by judicial immunity. Slayton's claim for damages against Judge Antu in her individual capacity is therefore dismissed with prejudice under 28 U.S.C. § 1915A(b)(2).

### b. The Injunctive Relief Claims.

Slayton also appears to seek injunctive relief against Judge Antu in her individual capacity. Judicial immunity does not bar prospective injunctive relief against a judicial officer acting in a judicial capacity. *See Pulliam v. Allen*, 466 U.S. 522, 536 (1984). However, to state a claim for such relief, Slayton must allege that she has no adequate remedy at law and that she is exposed to a serious risk of irreparable harm. *Id.* at 537. In this case, Slayton has an adequate remedy at law through the state-court appeals process for any allegedly improper rulings made by Judge Antu in Slayton's criminal case. *See Pleasant v. Sinz*, No. 9:15-cv-00166-MHS, 2016 WL 4613359, at *4 (E.D. Tex. Aug. 5, 2016) (the appeals process provides an adequate remedy at law). She has therefore not stated a claim upon which relief can be granted, and her injunctive relief claim is dismissed with prejudice under 28 U.S.C. § 1915A(b)(1).

### 3. *Younger* Abstention

Even if Slayton had alleged a legally sufficient claim against Judge Antu under § 1983, this Court would decline to exercise its jurisdiction under *Younger v. Harris*, 401 U.S. 37, 54 (1971). The *Younger* doctrine requires federal courts to decline to exercise jurisdiction over lawsuits when: (1) the federal proceeding would interfere with an "ongoing state judicial proceeding"; (2) the state has an important interest in regulating the subject matter of the claim; and (3) the plaintiff has "an adequate opportunity in the state proceedings to raise constitutional challenges." *Middlesex Cnty. Ethics Comm'n v. Garden State Bar Ass'n*, 457 U.S. 423, 432 (1982).[1] In determining whether the current federal proceeding would interfere with an ongoing state proceeding, the Court considers whether "the requested relief would interfere with the state court's ability to conduct proceedings, regardless of whether the relief targets the conduct of a proceeding directly." *Bice v. La. Pub. Def. Bd.*, 677 F.3d 712, 717 (5th Cir. 2012) (quoting *Joseph A. ex rel. Wolfe v. Ingram*, 275 F.3d 1253, 1272 (10th Cir. 2002)).

---

[1] Exceptions to the *Younger* doctrine exist when "(1) the state court proceeding was brought in bad faith or with the purpose of harassing the federal plaintiff, (2) the state statute is 'flagrantly and patently violative of express constitutional prohibitions in every clause, sentence, and paragraph, and in whatever manner and against whomever an effort might be made to apply it,' or (3) application of the doctrine was waived." *Texas Ass'n of Bus. v. Earle*, 388 F.3d 515, 519 (5th Cir. 2004) (quoting *Younger*, 401 U.S. at 49). Slayton does not allege facts showing that any of these exceptions apply in this case.

11

Slayton's claims meet all three requirements for abstention under the *Younger* doctrine. Any decision by this Court on the propriety of Judge Antu's rulings on bond and pretrial release would directly interfere with the on-going proceedings in Slayton's current criminal case. The State of Texas has an important interest in regulating the integrity of proceedings within its state courts. *See Sprint Commc'ns, Inc. v. Jacobs,* 571 U.S. 69, 72-73 (2013) (*Younger* abstention is particularly appropriate in cases that "implicate a State's interest in enforcing the orders and judgments of its courts" (citing *Pennzoil Co. v. Texaco Inc.*, 481 U.S. 1 (1987))). And Slayton has an adequate opportunity to challenge Judge Antu's rulings and conduct by way of an appeal. Even if Slayton's claims were not otherwise barred, this Court would decline to consider them under *Younger* and would dismiss this action with prejudice.

### B. Claims Against Clerk of Court Marilyn Burgess

Slayton sues Harris County Clerk of Court Marilyn Burgess, alleging that Burgess violated Slayton's rights by "picking and choosing" which of her *pro se* motions and complaints to file. (Dkt. 1, pp. 4, 7). It is again not clear whether Slayton is suing Burgess in either her official or individual capacity; however, she is not entitled to relief against Burgess in either capacity.

#### 1. Official Capacity Claims

To the extent that Slayton sues Burgess in her official capacity, her claim is

barred by sovereign immunity for the reasons explained above in connection with Slayton's claims against Judge Antu. *See Will*, 491 U.S. at 66 (holding that sovereign immunity bars actions against a state or state official unless Congress has abrogated the immunity or the state has specifically waived its immunity). The damages claim against Burgess in her official capacity is dismissed with prejudice under 28 U.S.C. § 1915A(b)(1) as seeking monetary relief from one who is immune from such relief.

### 2. Individual Capacity Claims

To the extent that Slayton sues Burgess in her individual capacity, her allegations do not state a claim for which relief may be granted. Slayton alleges that Burgess would "pick and choose" which of her *pro se* motions, complaints, and other pleadings to file. These allegations implicate Slayton's right of access to the courts, which is protected by the First Amendment and the Due Process Clause of the Fourteenth Amendment. *See Bounds v. Smith*, 430 U.S. 817, 821 (1977); *DeMarco v. Davis*, 914 F.3d 383, 387 (5th Cir. 2019) (citation omitted). However, the constitutional right of access is not a free-standing, all-encompassing right. *Lewis v. Casey*, 518 U.S. 343, 351-53 & n.3 (1996). Instead, a prisoner must allege a concrete injury as a result of the denial of access, such as that the violation hindered the prisoner's ability to pursue a "nonfrivolous," "arguable" legal claim. *Id.*; *see also Brewster v. Dretke*, 587 F.3d 764, 769 (5th Cir. 2009) (per curiam).

While Slayton alleges that Burgess filed only some of her *pro se* motions, she does not allege facts showing that this selective filing denied her access to the courts, particularly since she is represented by counsel in the criminal proceedings against her. *See Tarter v. Hury*, 646 F.2d 1010, 1014 (5th Cir. Unit A 1981) (holding that the clerk's refusal to docket *pro se* motions filed by a criminal defendant represented by counsel does not deprive the defendant of a constitutional right of access to the courts). In addition, Slayton alleges no facts to show that her ability to pursue any nonfrivolous legal claims was hindered or that she suffered any other hardship of constitutional magnitude. *See Lewis v. City of Waxahachie*, 465 F. App'x 383, 385 (5th Cir. 2012) (per curiam) (affirming dismissal of claim that the clerk violated the plaintiff's right of access to the courts by refusing to file certain motions because the plaintiff did not show that she was prevented from pursuing a legitimate claim). Slayton has therefore failed to state a claim upon which relief can be granted, and her claim against Burgess in her individual capacity is dismissed with prejudice under 28 U.S.C. § 1915A(b)(1).

C. **Claims Against Cheadle and Cheadle Law Firm**

Slayton alleges that Attorney Cheadle and members of his law firm violated her rights by dismissing her court-appointed attorney without her consent, taking nude photos of her on his personal phone, and threatening and bribing her to continue to his representation. (Dkt. 1, p. 4). While disturbing if true, these allegations do

14

not state a claim for relief under § 1983.

To state a valid claim under § 1983, a plaintiff must (1) allege a violation of rights secured by the Constitution or laws of the United States, and (2) demonstrate that the alleged deprivation was committed by a person acting under color of state law. *See West,* 487 U.S. at 48. The first element recognizes that "state tort claims are not actionable under federal law; a plaintiff under [§] 1983 must show deprivation of a federal right." *Nesmith v. Taylor,* 715 F.2d 194, 195 (5th Cir. 1983) (per curiam). The second element, which requires action "under color of state law," means that generally only *state* actors—not private parties—can be liable for violations of civil rights.[2] *See Frazier v. Bd. of Tr. of Nw. Miss. Reg'l Med. Ctr.,* 765 F.2d 1278, 1283 (5th Cir. 1985).

Even taking Slayton's allegations as true, she has identified no federal constitutional or statutory right that Cheadle or his law firm violated in their dealings with her. In addition, Slayton's claims against Cheadle and his law firm fail because they are private parties, not state actors. *See Lugar v. Edmonson Oil Co.,* 457 U.S. 922, 940 (1982) (a complaint challenging only private action does not state a cause

---

[2] Limited exceptions to this general rule exist when the plaintiff can show that the private actor was implementing an official government policy or when the private actor's actions are fairly attributable to the government. *See Rundus v. City of Dallas, Tex.,* 634 F.3d 309, 312 (5th Cir. 2011). A private party who conspires with state actors to deprive another of his constitutional rights may also be considered a state actor. *See Priester v. Lowndes County,* 354 F.3d 414, 421 (5th Cir. 2004). Slayton's complaint does not allege facts showing that any of these exceptions apply to her case.

of action under § 1983); *Cornish v. Corr. Servs. Corp.*, 402 F.3d 545, 549 (5th Cir. 2005) ("'[P]rivate conduct, no matter how discriminatory or wrongful' is excluded from § 1983's reach." (quoting *Richard v. Hoechst Celanese Chem. Grp., Inc.*, 335 F.3d 345, 352 (5th Cir. 2003))). Slayton's civil rights claim against Cheadle and his law firm lacks an arguable basis in law, and it is dismissed under 28 U.S.C. § 1915A(b)(1) as frivolous.

## IV. CONCLUSION

Based on the foregoing, the Court **ORDERS** as follows:

1. Slayton's civil rights complaint, (Dkt. 1), is **DISMISSED with prejudice** under 28 U.S.C. § 1915A(b).
2. Any pending motions are **DENIED** as moot.
3. This dismissal counts as a strike for purposes of 28 U.S.C. § 1915(g).

The Clerk shall send a copy of this Memorandum Opinion and Order to the plaintiff. The Clerk shall also send a copy of this dismissal to the Three-Strikes List Manager at the following email: **Three_Strikes@txs.uscourts.gov.**

SIGNED at Houston, Texas on _____Jan 26_____, 2023.

*[signature]*
DAVID HITTNER
UNITED STATES DISTRICT JUDGE